UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:04CV-76-J

KENNETH GIPSON                                                        PLAINTIFF

v.

JO ANNE B. BARNHART,
Commissioner of Social Security                                DEFENDANT

**MEMORANDUM OPINION**

      This case is before the Court on review of plaintiff Kenneth Gipson's objections to United States Magistrate Judge King's Report and Recommendation that his Social Security claim should be denied. After de novo review of the plaintiff's specific written objections, the Court is of the opinion that the recommendation should be accepted and the decision of the Commissioner should be affirmed.

      Mr. Gipson filed his application for Disability Insurance Benefits on July 8, 2002 alleging he was disabled from engaging in any substantial gainful employment as of January 20, 2001 as a result of degenerative arthritis (Tr. 101). While Mr. Gipson has several physical complaints including low back pain, bilateral knee pain, seizures, and hearing loss, his primary concerns appear to be back and knee pain. The application was denied at the initial stage and upon reconsideration. After a hearing on September 3, 2003, Administrative Law Judge Gary Flenner found that Mr. Gipson suffers from a combination of impairments that are severe, that he is unable to perform any of his past relevant heavy work, but that he retains the physical capacity to perform a near full range of medium work activity (Tr. 49). Mr. Gipson appealed the adverse decision to the Appeals Council, which found no basis for reviewing the ALJ's Decision. This appeal followed.

This Court's review of the Commissioner's findings is limited to determining whether they are supported by substantial evidence, 42 U.S.C. §405(g); Elam ex rel. Golay v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision is supported by substantial evidence, it must be upheld by the court even if the record might support a contrary conclusion, Smith v. Secretary, 893 F.2d 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). It is within the parameters of the substantial evidence rule that the Court addresses and rejects each of the plaintiff's objections.

Mr. Gipson claims the ALJ erred by accepting the opinions of the state agency reviewing physicians (Dr. Stubbs and Dr. Chernobelsky) over those of his treating physicians (Dr. Hiland and Dr. Manchikanti). Mr. Gipson contends that, under 20 C.F.R. §404.1527 analysis, 1) his treating physicians' opinions are not inconsistent with other substantial evidence of record, 2) there was medically acceptable clinical data in the form of an MRI to support their opinions, and 3) the ALJ did not sufficiently articulate his reasons for rejecting his treating physicians' opinions. Mr. Gipson

also argues that the ALJ misconstrued his physical activities since the alleged onset date, and that the ALJ failed to contact his treating physicians to obtain clarification of their opinions.

Dr. Hiland is Mr. Gipson's general physician whose records indicate a limited treatment history for low back and knee pain.  On November 12, 2002, Dr. Hiland provided a Medical Assessment of Ability to Do Work-related Activities form, with notations that would essentially preclude Mr. Gipson from full-time work (Tr. 196-197).[1]  The medical records from Dr. Hiland provide little if any objective basis for the findings contained within the assessment form.  Dr. Manchikanti was Mr. Gipson's pain management physician for back pain complaints.  Dr. Manchikanti also provided an assessment form (dated May 21, 2003), the findings of which would render Mr. Gipson capable of some light work (Tr. 304-305).[2]

In contrast, state agency physician Dr. Stubbs' residual functional capacity findings (Tr. 275-282) – which are supported by the examination performed by Dr. Chernobelsky – suggest significantly less restrictive exertional limitations than those of Dr. Hiland and Dr. Manchikanti.

---

[1] Dr. Hiland indicated that Mr. Gipson could occasionally lift and carry ten to fifteen pounds and, very little weight on a frequent basis.  He further indicated that Mr. Gipson could stand and walk for a total of two hours in an eight hour day in twenty minute intervals, and could sit for four to five hours a day in forty-five minute intervals.  He found that Mr. Gipson could occasionally balance, stoop, crouch, kneel or crawl but never climb, and that his ability to reach, handle, feel, push or pull were limited.  Mr. Gipson was also to avoid exposure to heights, moving machinery and temperature extremes.

[2] Dr. Manchikanti indicated that Mr. Gipson could lift and carry up to twenty pounds occasionally and five pounds frequently, and that he could sit, stand or walk for a total of three to four hours each in an eight hour day in thirty minute intervals.  He further indicated that Mr. Gipson could frequently balance, occasionally climb stoop and kneel, but never crouch or crawl.  Mr. Gipson was found to have a limited ability to push, pull or hear, and needed to avoid exposure to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration.

Dr. Stubbs' findings[3] are supported by the November 23, 2002 physical examination of Mr. Gipson by Dr. Chernobelsky (Tr. 198-202a). Dr. Chernobelsky noted from the examination that Mr. Gipson has a normal gait and station, intact muscle strength in the upper and lower extremities, and no associated numbness, tingling or weakness in the lower extremities (Tr. 198). Additionally, there was normal range of motion in the shoulders, hips, and cervical and lumbar spines (Tr. 200, 202, 202a). The straight leg raise was negative in the sitting and supine positions (Tr. 200). Dr. Chernobelsky found this to be a normal orthopedic examination, with no significant abnormality that would prohibit Mr. Gipson from work or daily living activities (Tr. 200-201).

Mr. Gipson suggests that the ALJ was bound by the opinions of Dr. Hiland and Dr. Manchikanti pursuant to the treating physician rule, 20 C.F.R. §404.1527(d)(2). While it is true that a treating physician's opinion – if uncontradicted – should be given complete deference, neither Dr. Hiland nor Dr. Manchikanti's opinion falls into this category. In fact, the two opinions appear to contradict each other, and are contradicted by the opinions of Dr. Stubbs and Dr. Chernobelsky. Nonetheless, a treating physician's opinion is entitled to great weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, 20 C.F.R. §404.1527(d)(2). In other words, there is no error in an ALJ's declining to accept the unsupported conclusory statements of a physician, even a treating physician. 20 C.F.R. §404.1527(e); Hall v. Bowen, 837 F.2d 1050, 1053 (11th Cir. 1986). It was not

---

[3]Dr. Stubbs indicated that Mr. Gipson could occasionally lift and carry fifty pounds and twenty-five pounds frequently. She further indicated that Mr. Gipson could stand and walk for about six hours per eight hour workday, and could sit for about six hours per workday. She further found that his ability to push and pull was unlimited, that he could frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds. Similarly, she found him unlimited in his ability to frequently balance, stoop, kneel, crouch, and crawl. She did caution that he should avoid exposure to machinery and heights.

4

error for the ALJ to evaluate and reject the medical findings from each of these providers on the basis that the assessments were inconsistent with each other, were inconsistent with Dr. Chernobelsky's evaluation, and were inconsistent with Mr. Gipson's own testimony.

In a related argument, Mr. Gipson suggests that the ALJ failed to consider the MRI completed on June 28, 2002, and that it constitutes a medically acceptable diagnostic technique providing objective support for the opinions of Dr. Hiland and Dr. Manchikanti as contemplated by 20 C.F.R. §404.1527(d)(2).  However, the ALJ Decision does address the MRI findings, as well as the subsequent treatment prescribed by Dr. Hiland and Dr. Manchikanti as a result of the MRI findings (Tr. 43).  Furthermore, the findings contained in the MRI are equivocal at best, showing some degenerative and arthritic changes, with no evidence of disc herniation or obvious nerve root impingement.  The ALJ properly addressed the MRI findings within the context of Mr. Gipson's treatment regime, and determined that the findings were insufficient to support Mr. Gipson's subjective complaints of pain (Tr. 44).  The record is clear that the ALJ did not fail to consider the MRI, he just failed to assign the importance Mr. Gipson feels it deserves within 20 C.F.R. §404.1527(d)(2) analysis.  There is substantial evidence of record to justify the ALJ's findings with regard to the opinions of Mr. Gipson's treating physicians.

Additionally, Mr. Gipson argues that the ALJ did not give sufficient justification for rejecting the treating physicians' opinions in this case, stating, "ALJ Flenner failed to set forth what objective test results, clinical findings and treating physicians' treatment notes supported his conclusion that the treating physicians' opinions were not supported by objective evidence of record" (Plaintiff's Objections, page 7).  Rejection of treating physician opinions is governed by 20 C.F.R. §404.1527(d)(2), which requires the Commissioner to give good reasons for the weight given

to a treating source's opinion. ALJ Flenner devoted six pages to thoroughly addressing all of the medical evidence before rejecting the assessments of Dr. Hiland and Dr. Manchikanti as follows:

> In this case, the opinions of the treating physicians cannot be afforded "controlling weight" because they do not meet the four-part test above. Dr. Hiland and Dr. Manchikanti's opinions are not supported by objective findings, their office and treatment notes, findings on examination, type and level of treatment prescribed or what is medically reasonable while considering the claimant's impairments . . . . The evidence shows the claimant quit working long before he sought treatment for his back or knee complaints . . . .While the claimant's condition may have started bothering him when he stopped working in January 2001, there is simply no basis for a finding his back or knee pain was of a level of severity to preclude all work activity. The claimant worked at very exertionally demanding work up to the day he stopped working, without any evidence of treatment or precipitating event or trauma, except one visit to the doctor in June 2000. The opinions of the treating physicians are apparently based mainly on what the claimant has told them about his subjective level of pain and limited activities, even though the claimant himself rated his pain at a "four" on a scale to 10, with 10 being the most severe pain. At present, the very limited objective findings, in the course of prescribed treatment all subsequent to filing his claim for disability, and frequency of treatment do not support the limitations assessed by either treating source. Accordingly, those opinions are not persuasive and given little weight. (Tr. 45)

The ALJ properly clarified why the treating physicians' opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the other substantial evidence in the case record, identified the evidence supporting each such finding, and explained his application of the 20 C.F.R. §404.1527(d)(2) factors in determining the weight given to the opinions. For these reasons, Mr. Gipson's argument fails.

Mr. Gipson further suggests that the ALJ misconstrued his work activities following his alleged disability date of January 20, 2001. Specifically, Mr. Gipson takes issue with the ALJ's finding that he had worked from January 20, 2001 until June (or possibly as late as November) of 2001 in construction work in determining whether he was disabled in 2003. Mr. Gipson offered testimony on this issue during the hearing (Tr. 331). More importantly, the medical records

6

suggested a continuation of work past the alleged onset date, given the description of work-related injuries contained within the records themselves (Tr. 179, 221, 222). The ALJ found that these inconsistencies go directly to Mr. Gipson's credibility. Additionally, these are the sort of medical records and other evidence that are entirely appropriate in evaluating a claimant's credibility, 20 C.F.R. §404.1529( c)(3); Warner v. Commissioner, 375 F.3d 387, 392 (6th Cir. 2004). In this case, the Court finds that the ALJ's credibility determination is entitled to great deference because it is supported by substantial evidence, Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997).

Finally, Mr. Gipson suggests that the ALJ should have contacted his treating physicians to seek clarification of their opinions pursuant to 20 C.F.R. §404.1512(e). However, he has failed to show how the medical evidence of record from Dr. Hiland and Dr. Manchikanti was inadequate for the disability determination. For this reason, his argument under 20 C.F.R. §404.1512(e) fails.

For these reasons, the recommendation of the magistrate is adopted, and an Order in conformity with this Memorandum Opinion has this day been entered.